v. Thomas M. Pinckney, et al. Arguments not to exceed 15 minutes per side. Mr. Lee, for the appellant, you may proceed. Mr. Lee, good morning. Good morning. May it please the Court, My name is Charlie Lee, and I represent the Appellant Americare Systems. And with the Court's permission, I'd like to save three minutes for rebuttal. I'd like to focus my argument today on two primary issues in this de novo appeal. The first is, does the hiring of appellate counsel between a jury's verdict and the entry of final judgment six months after the fact constitute actual or sufficient injury to an aggrieved client triggering the statute of limitations for malpractice cases against the trial counsel? And two, on summary judgment motions where all facts and inferences are viewed in the light most favorable to the moving party, did the District Court err in finding that appellate counsel who was retained for the sole purposes of an appeal had constructive knowledge of malpractice as a matter of law, thus imputing that constructive knowledge to the aggrieved client? We don't dispute that Tennessee Code provides for a one-year statute. We don't dispute that Tennessee applies a statute of limitations begins to run when the plaintiff knows of his injury or should know of its injury upon the exercise of reasonable care and due diligence. We contend, however, that the District Court committed error when it ruled that, quote, plaintiff thus suffered actual injury when it retained post-judgment and appellate counsel to address the award of punitive damages because this constitutes incurring an expense as a result of defendant's alleged negligent act, end quote. The District Court cited the Tennessee Supreme Court case of Cole v. Dearborn. Respectfully, the District Court's reliance on Cole and the other cases cited by my colleague to the facts and circumstances of our case we believe was an error because those cases deal with hiring a lawyer to take corrective action, which the client is undoubtedly aware. Unlike the cases relied on, the District Court and the defendants, we didn't hire appellate counsel to correct trial counsel's error. Appellate counsel was hired to find errors to take up on appeal. This isn't the argument, though, that you wouldn't have had to hire him at all if there had been a malpractice? Well, we don't know. Regardless of why you...if you're just talking about the injury, if the injury results from having lost the case and you wouldn't have had to hire an appellate counsel if you'd won the case, how can you say there's no injury in it? Well, negligence... Far from what they knew. Because we didn't know whether that negligence at the trial court was going to manifest itself into an injury until a court ruled on final judgment. Tennessee has this unique procedure where the... You knew there was liability, though, right? Well, there was liability from the jury's verdict. There was liability that resulted in your having to hire the lawyers. There was not liability, Your Honor, until the trial court entered final judgment on October 1 because Tennessee has this unique procedure where... If they held that it was not liable, you wouldn't have had to hire those lawyers, right? Well, certainly if the trial court on October 1, when it went through the Hodges factors during that six-month period, ruled that there was no punitive damages that can be awarded because the trial court can disregard whatever evidence that it decided to admit. And if it disregarded the article, there would be no evidence of net worth against our client. And the trial court could have ruled that because there was no net worth, as a matter of law, punitive damages cannot be affirmed by the jury verdict. We didn't know that until October 1. And if that occurred, we would have never had to have gone through an appeal because we're appealing punitive damages. That's a unique procedure under Tennessee because you have a jury's verdict. And then under Tennessee law, the judge is required under the Hodges factors to act as a 13th juror. It has to go through all of the evidence and decide whether there was sufficient evidence to affirm a jury's verdict. Our contention in the underlying case was that there was no separate evidence. And this is what Judge Lee, who was a- You hired the lawyers on the theory you were going to need an appeal, right? A potential appeal, yes, Your Honor. And if you had won at that earlier stage on the ground that there was no evidence of the net worth, then there wouldn't have been something to appeal. That's what I'm not quite getting there. Okay. Perhaps I'm not stating myself clear enough. But when the jury rendered its verdict on April 30th, they awarded punitive damages to the underlying plaintiffs for $5 million. Final judgment was not entered. We did not know what errors were committed by the trial counsel in that underlying case. But you would have, after the attorneys reviewed the trial transcripts and their billing records, indicate that they did review the transcripts and that by doing so, can't we presume that they have constructive knowledge of the errors that occurred? I mean, unless they're not doing their jobs either. But having reviewed the trial transcript, either they had knowledge or they had constructive knowledge before the one-year statute of limitations. No or yes? Well, certainly when an appellate counsel reviews a trial transcript, he's going to find errors from the trial court. He may find errors from trial counsel. But an appellate counsel is hired to take up issues on appeal from errors from the district court. He's not there to... Well, we're talking about constructive knowledge of the alleged malpractice and when the clock starts running as to constructive knowledge. And you say it didn't run until after the judgment was entered. I think the clock runs once they've reviewed the trial transcript and either discovered the malpractice or should have discovered the malpractice, and that is more than one year out. Your Honor, I concede that in every trial there are trial missteps, there are trial blunders, there are strategic decisions not to do certain things in the course of the trial. For whatever reason. But we don't know whether or not those mistakes or errors are going to manifest itself into an adverse judgment. Is that... Okay, so that's your position, that there is no injury until the judgment is rendered. But I don't think that's what the law of Tennessee is. I think if you have to incur expenses or damages even before the judgment is entered, that's when the claim accrues. Am I wrong about that? Well, that's correct. But the cases in Tennessee, the Colt case cites general principles of Tennessee law, talking about expenses. We don't dispute that. What I'm disputing is that the Colt case sets forth a specific set of facts under which the general principles were applied to those specific steps. And all of those cases, we're talking about the Colt case and the cases cited by the district court, deal with corrective action where the client is actually aware. In the Colt case when the IRS sent a notice to the client, the client retained new counsel to correct old counsel's errors. In this case we have an appellate counsel. It would create a horrible public policy if appellate counsel was required to, and I hate to use the word, squeal on trial counsel about its errors and tell the client that, hey, listen, your trial counsel committed an error, and therefore the clock is running for the statute of limitations. That might be bad policy, but I'm not the one that sets the public policy in Tennessee. I think a one-year statute of limitation is a horrible policy. It's too short, I think, but that's what Tennessee has chosen to do in malpractice cases, and it's discovered or should have discovered that starts the running of the one-year clock, and that may be horrible public policy, but we enforce it, do we not? Well, we do enforce the one-year statute, but my case hinges on the distinction between the facts of the Cole case and the cases cited by the district court and the particular facts of our case. The case that fits on all fours in our case is the Cherry case. The Tennessee Supreme Court in Cherry, and this was decided two years after the Cole case where the Tennessee Supreme Court denied cert, and the Tennessee Court of Appeals said a legally cognizable injury in litigation, and we're talking about litigation. The Cole case was not in litigation. It occurred when the trial court entered final judgment awarding damages, and that court could not be more clear, and I'm going to quote this. It says, in the middle of litigation, this is our case, in the middle of litigation because we don't have a final judgment, where an attorney missteps and there is ultimate uncertainty whether that misstep will manifest itself into an injury to the client. The most easily identifiable time when rights, interests, liabilities become fixed is when the court enters judgment. That's the starter pistol. It might be the most easily identified point, but it's not necessarily the only one. Also, under your theory, would the judgment not be final until all the appeal time, deadlines have exhausted? Is that your theory? And that's the Cherry case, and that's exactly what we did. What Cherry case says is that you can't wait until after the appeal is done, but the starter pistol starts when there's final judgment at the trial court. All right. I'll look again at Tennessee law and see if that's when the clock runs. Yes, and I would ask the court to carefully review the Cherry case and fit that case into the facts of our cases. I don't think Cole applies, and I don't believe the other cases apply because those cases deal with corrective action and not with an appellate lawyer. In our case, Your Honor, this is what we did. We had a verdict on the 30th. Obviously, there's a potential for an appeal, but we didn't know until the court entered final judgment and the trial court in the underlying case waited six months until October 1. We hired appellate counsel to review the record to see whether or not there were errors in the trial court. In fact, we appealed. The first appeal we won, it got reversed and final judgment for my client, and then the Tennessee Supreme Court took it and reversed that and then remanded it back to the Court of Appeals and said that there was sufficient evidence. It had nothing to do with the evidence that we're talking about here, which is the hearsay article. So then when October 1 hit, that's when we first became aware that the trial court said, much to his surprise, that there was no objection on that article and that there was no separate evidence dealing with net worth. And then at that point... You're surprised that wasn't obvious from the trial transcript, that there was not an objection and that there was no other evidence of net worth from the trial transcript? Yeah, but we didn't know whether or not the trial court was going to rely upon that. In fact, you can say just the opposite, that the trial court could have said, this is obviously clearly hearsay evidence, that I'm just going to reject this evidence because the court is the gatekeeper of the evidence. I mean, we could make the argument, yeah, it's obvious that the trial court would rely on admissible evidence, but it's just as obvious that a trial court can disregard that admissible evidence if it's clearly hearsay and clearly irrelevant because we're talking about an article that talked about the company's net worth in 1998 when the facts giving rise to the underlying case occurred in 2003. Was that the argument you made to set aside the jury's verdict? No, we didn't make that argument. Normally an evidentiary matters if the parties don't object, even if something is hearsay, it comes in, and the judge later on doesn't second-guess counsel and say, well, I think maybe counsel could have objected, should have objected, and therefore I'm going to throw this out. I mean, I suppose theoretically it could happen, but as an evidentiary matters, it very rarely does. I mean, if that's what you were hoping for, there's not much of a hope there, I think. But we didn't know that. We didn't know that until October 1. And, Your Honor, we're here on summary judgment. I don't know how a court, as a matter of law, can rule constructive knowledge on summary judgment when all the facts are supposed to be viewed in our favor. We should get the benefit of the doubt whether or not appellate counsel should have known or not known through expert testimony, let them come in, testify, and say, you know, we didn't know, we didn't tell the client. So my client is the one who's prejudiced, and he didn't know, my client didn't know until October 1 when that error manifested itself in a final judgment when the court ruled that trial counsel failed to object and how surprised he was and that there was no separate piece of evidence. But for that, that's why punitive damages was affirmed.  Thank you. Good morning, Your Honor. My name is Tom Quartz. I represent the appellee, Tom Pickney, and his firm, Howland Fisher. And this is my partner, Will Caldwell. Based upon your questions, I believe you understand my position. First of all, whenever you file a motion for summary judgment on statute of limitations, and nearly every case that's been cited by both sides was the result of a motion for summary judgment on the statute of limitations, and it's very amenable to statute's summary judgments. First, you've got to look at the theory. You concede for the sake of the statute of limitations. OK, let's assume we were negligent, although, of course, we deny it. But for this summary judgment, we're going to concede negligence, and we're going to follow your theory and say, OK, if this is your theory, let's see how it applies to the discovery rule and when you first began incurring a loss or damages. In this case, their theory is really very... They pared it down. It started with lots of other theories, but they finally came down to this. We allege that the failure to object to the newspaper article, which was obviously hearsay, and it's never been disputed that it wasn't hearsay by anyone, it was such a blatant, gross deviation from the standard of care that you violated the standard of care because that article was the sole basis upon which the punitive damage award could have been upheld by anyone. By the sole basis, they mean without it, it could not have been upheld. Without it. That is their theory. It's not that it was the sole basis. It's just without it, it could not have been upheld. If that article had not been admitted, there would have been zero damages. That's what they say. Now, we disagree with that, but accepting that theory, we have to track it in here. It is beyond dispute that they hired within... First of all, the first thing that occurred, and the trial court didn't focus on this, but the day after the verdict, Richard Montgomery, who owns AmeriCare, talked to Mr. Pinckney. The day after a shocking $5 million unexpected punitive damage verdict came down, he talked to Mr. Montgomery, and Mr. Montgomery alleged in his complaint, and as part of their theory, on that day, Tom Pinckney told him, I never really represented AmeriCare. In his deposition, I said, How did that affect you? He said, Well, that was certainly a negative connotation. Yes, I lost $5 million, and the man says I never really represented AmeriCare. So that's sign number one. Within a week, he hires what they want to call appellate counsel, and it's a good point. What were they going to appeal unless they were strongly anticipating the likelihood that the judge was going to uphold some punitive damage award? So they did incur that. Did they file the post-verdict motion that was pending before the judge, or did Mr. Pinckney do that? No. First of all, they hired him, and they unequivocally say, but for the punitive damage award, for which Mr. Pinckney is solely responsible, wouldn't have been there if he had objected. They hired. That's why they had to hire outside counsel.  which clearly showed the admission of that article, showed that it was shown to the jury and read to the jury before Mr. Pinckney had ever seen it, and that's why he didn't object, because he felt that would just be emphasizing it more. But they still say that was gross deviation from the standard of care. But to your question, what happened then is if reviewing the transcript and $125,000 worth of time by two law firms to review this and examine the punitive damage award and think of ways to get out of it weren't enough, on July 2nd, the plaintiff attorney, on his own, filed a motion to enter judgment. And with that, he included a proposed finding of fact and conclusions of law. And he addressed all of the Hodges factors. And the number one factor he addressed, the financial condition, financial wherewithal of AmeriCare. And he cited one thing. The article in the newspaper. So if they had by some chance not noticed that during their first month of reviewing the transcript on punitive damages, there it was. And that's exactly like other cases where even just a motion for summary judgment was enough to begin the notice and knowledge of potential malpractice. What about the idea that they didn't really know whether maybe there had been some agreement between the attorneys to allow this to come in? Just as a matter of, for instance, speculating. Maybe they knew that that evidence could have been brought in by an appropriate matter and it would have been the same or maybe even worse. And so they figured, well, we'll just agree to let that come in and go on the basis of that. The answer to that is very simple. If you read the transcript on one page, when it was entered, it went like this. Your Honor, the next article we'd like to introduce is an article from 1997 that shows, 1998, that shows that AmeriCare grossed $47 million. It was also highlighted on a screen. The next words out of Mr. Pinckney's mouth are, I've never seen that article. May I see it? So it's apparent from the transcript that there was no agreement, that he'd never seen it. And he sat there reading it and thinking, good gosh, the jury's already seen this, which was pretty bad on the part of the plaintiff attorney to do that. But he's faced then with, they're already reading it. If I object for hearsay, that's telling them this is what you found out later. That's grounds for a motion for mistrial, though. It could have been. They put it on the screen before the exhibit's been admitted. He did it. I mean, that's mistrial right there if it shouldn't have gone in in the first place. It could have been a motion for a mistrial. That could have happened, yes. OK, getting back to my question, the underlying plaintiffs file a motion for entry of judgment. That's before the judge. The new counsel respond to that. Is that right? They prepare and draft a response. They study it. That is in July? Yes. And the timesheets show that Mr. Lee spent several days reading it. At that point, this document, this hearsay document, is front and center. Is that right? It's the one he, the only thing he emphasized is showing the financial aspects, financial wherewithal of America. And they revised and proposed alternative motions. And then, for the record, it turned out the judge said, wait, I don't want anything from anybody. So all that work and all that bother, the judge finally said, I'll make my own decision. I didn't ask for any of this. I'll come up with my opinion, which then was amazingly similar to the plaintiff's opinion. But so I think this case is so much stronger and clearer than many of the other reported cases we've found. And Cherry VDs has nothing to do with that. It merely said, that's the most easily identifiable time when you've suffered a loss during a trial. But then numerous cases afterwards have said, well, we didn't say that's the first time. And we have many cases we've cited where just the filing of a summary judgment was enough. The Cole case, a letter from the IRS to a client saying, we think that this tax deduction and tax plan you've taken may not be good. And we might be coming down on you for that. They hire a lawyer then just because of that letter. It's years before it's determined ultimately that they were wrong with that tax plan. Yet in Cole, the statute began running the day they got the letter from the IRS. And then the loss began as soon as they hired counsel to defend against the IRS. The cardiac case that we've cited perfectly tracks this case. And it mentions Cherry and all these other cases. In that case, there was a contract between the hospital and a doctor. And they had sued and wanted $1 million compensation because of the fee arrangements. And a summary judgment was filed by cardiac saying, your whole contract's no good. The contract's no good because there's a statute that makes it invalid to split fees. That summary judgment ultimately became the starting point of the notice that perhaps their lawyer had committed malpractice, the one who devised that plan. And they immediately hired a lawyer to defend that case. That case didn't reach an ultimate judgment for years afterwards, finding that in fact the plan was no good. The contract was void. So these cases track perfectly with this case. And therefore, and we haven't even touched on the conversation. Well, I did touch on the first conversation immediately, the day after with Richard Montgomery, where he says Mr. Pickney told him, I never really represented you. Now just think, you just lost $5 million punitive damage in a shocking verdict, unexpected, unanticipated. And your lawyer tells you, I never really represented you. Is that not something that might put you on notice that perhaps we've got a problem here? I wasn't even represented. They've tried to abandon that theory that they would have called a conflict of interest there. But they didn't completely. They said, no, we're just going on the theory that but for the introduction of the hearsay, this wouldn't, there would have been no way to sustain zero damages, punitive damages. They've also said, now the conflict, we're not abandoning that. We're not saying it would have caused a different result. But it is the background to show perhaps why his total lack of concern or representation of AmeriCare, perhaps why he made such a blatant error in not objecting to the hearsay article. So I believe, and I believe the district court was correct in this matter. The opinion was well written. It reviewed all of the law. And it reached the proper conclusion. And that is that the statute of limitations under Tennessee law, which is we can't change the policy. It's harsh. It's tough on some plaintiffs, especially just simple citizens who wouldn't have near the expertise that AmeriCare had, along with $125,000 worth of brilliant attorneys reviewing this all before a judgment was entered. So we simply believe that the court was correct and would ask this court to affirm the verdict. And if there's no other questions, thank you. Thank you. Your Honor, I'd like to address one issue that deals with rightness. We can talk about theory and knowledge, about when appellate counsel knew or should have known. But in application, what would happen if the statute of limitations began to run when the district court said it did, which was sometime in July when this review occurred? And let's say at that point, AmeriCare decides that it's going to file a malpractice action against Mr. Pickney before a final judgment has been entered. The case is not ripe. There's no liability. Negligence without damages is not actionable. They claim there's damages once they've incurred the expense of hiring the attorney that is in response to the malpractice. So if AmeriCare decided to hire its appellate counsel after October 1, when it got final judgment, does that mean that the statute of limitations then shifts six months? I mean, it's a moving target. And why is my client penalized for being diligent? Whatever occurs first, whatever damages or expenses have to be incurred, and if that happens earlier by the retention of the attorney, the final judgment wouldn't do it either because you appealed it. And to my understanding, this malpractice, this whole matter was stayed pending the appeals. Was it not? We waited until the last day because we didn't want to sue Mr. Pickney. We waited until... I mean, we researched after October 1, and we waited... This was stayed while it went through the appellate courts in Tennessee. Is that right? That's right. Okay, and that's what would happen if you sued before the district judge entered the judgment. I assume this all would be stayed, just like it was stayed on appeal, and the only difference is the judgment hasn't been entered. The bottom line is whether you had constructive knowledge of the malpractice, and two, whether you had incurred expense or damages. But the distinction, Your Honor, and I would just again ask the court to go back and read the Cole case and read the Cherry case. The distinction is incurring the expense for corrective action, the corrective action of something that a client is aware, hiring another lawyer to correct an action of the prior lawyer. Here we have appellate counsel who's not there to correct the action of the... Okay, did he... Did they get involved into the response by the plaintiff for the entry of the judgment that they say that the plaintiff moved to enter judgment? At this point, appellate counsel were representing Amerishore, so I assume that any response was made by the new counsel. Is that right? Appellate counsel? This is still before the entry of judgment, right? It is, but... Okay, so expenses are being incurred by appellate counsel in response to the entry of the judgment caused by the alleged malpractice, right? Two points there. This motion for entry of judgment is just an order affirming the jury verdict, and they list out all of the evidence that supports the award of punitive damages. Appellate counsel did review that. Appellate counsel did participate in working with Mr. Pickney, who was still representing AmeriCare, during that. We had our own proposed judgment. The court accepted the plaintiff's, no surprise. We're not here contesting the punitive damages award. That is in the past. What I'm talking about is when does that starter pistol begin? I mean, what if AmeriCare hired a friend of Mr. Montgomery's, and he wasn't charging him attorney's fees, didn't incur any expenses? What if the appellate counsel came in under some reverse contingency fee, where he didn't have to pay the expenses? What if AmeriCare didn't pay their attorney's fees? I mean, the expense that we're talking about in the cases that are relied upon by the district court deal with corrective action. Appellate expenses are very different, and if we had filed in August, in the interim, between the jury verdict and final judgment, the case would have been dismissed for not being right, because there's no liability until there's final judgment that's entered. Corrective action. So the judge was not allowed to correct the jury's verdict prior to the entry of the judgment in Tennessee? The judge could have done that, but it was speculative. That would be corrective action, right? Well, it would be corrective action by the judge. Yes, but it's corrective action that Beresher is hiring new counsel to engage in corrective action, and they're incurring the expense. Right, but the argument was never made, and why would it be made by trial counsel or appellate counsel to tell the judge, we messed up, we should have objected? The argument that was made to the trial counsel was that there was insufficient evidence to support a punitive damages award. Well, okay, I mean, you start out by saying you weren't sure the judge would enter the judgment consistent with the jury verdict, that there was uncertainty until the judgment was entered. Now you're saying it was a foregone conclusion that there was no corrective action you could have taken anyway. I mean, I'm not sure quite what the... No, I'm not saying that, Your Honor. What I'm saying is that there is ultimate uncertainty of liability until final judgment is entered. We didn't know what Judge Lee, the trial judge, was going to do. Now representative Beresher is able, or at least exercises her best efforts, not to have the judge enter the judgment consistently. Well, we of course, along with Mr. Pickney, filed a motion and told the judge that there was insufficient evidence to enter the judgment, not related to the article. In fact, the Court of Appeals in Tennessee, the first time around, said there was insufficient evidence, and we won. They completely reversed the judgment entered for defendant Americare. The Tennessee Supreme Court granted cert and reversed that. So that in itself, I think, reflects the fact that, you know, the underlying judgment at the trial court was uncertain, at best. And we didn't know whether any of those errors would manifest itself until liability occurred on October 1, and we filed within a year of October 1. Are you the same counsel as the appellate counsel? No. Just to be clear on that. Not you personally, but your law firm. No, not my law firm. But just to be clear on that, the client hired me because I'm a management of long-term care facility counsel where I manage firms, and he hired me to find appellate counsel, and I worked with appellate counsel. I just wonder, I mean, it's sort of speculative and beyond the strict confines of this case, but one would hope that this case doesn't keep metastasizing, but is it still a year within the possible negligence of appellate counsel in not filing their appeal in time? Are we going to face another third-level malpractice? Yeah, that's my public policy issue is when does it end? I mean, is appellate counsel because he didn't squeal on trial counsel? Or let's say the appellate counsel is in Mr. Pickney's same firm. I mean, then is the client imputed with constructive knowledge?  No. Listen, trial counsel messed up, and you need to consider suing him. If we hold against you, then there's arguably a malpractice claim at the next level. Yes, for appellate counsel failing to disclose. And that hasn't been brought within a year, so there's arguably next—or was it brought? Probably not within a year of that either, so there might be a fourth level. It could never end. Well, if somebody finally does something within a year, it might end. Yeah, I guess. Okay, thank you. All right, thank you, Your Honor. The case will be submitted.